CHARLES J. BERRYHILL v. WILLIAM C. RESSER and Another.[1]

May 21, 1896.

Nos. 9957—(126).

**Estoppel in Pais.**

B., as attorney for R. & D., obtained a judgment against C. for a large sum. The judgment and attorney's services not being paid, all of the parties met, and made a settlement, whereby R. agreed to satisfy his half interest in the judgment by accepting from C., in payment therefor, a much less sum than the face value of his interest, and C. promised to pay B. the share of his attorney's fees against R., which B. agreed to accept in lieu of R.'s indebtedness to him. R. performed his part of the terms of the settlement, and C. paid him his half of the judgment, less the discount. *Held,* that whether there were all of the essential requisites of a novation of parties was immaterial; that B., by his conduct and agreement, was estopped from maintaining an action against R. for his services.

Appeal by plaintiff from a judgment of the district court for Ramsey county, in favor of defendant Resser, entered in pursuance of the findings and order of Kelly, J. Affirmed.

*Cyrus J. Thompson* and *Charles J. Berryhill,* for appellant.
*Ira B. Mills,* for respondent.

BUCK, J. This action was brought to recover for professional services rendered by the appellant for the respondent and one Davison, as plaintiffs, against one Carney, as defendant, in which action

───────

[1] Reported in 67 N. W. 542.

a judgment was rendered against him for the sum of $5,507, and, by reason of accrued interest, the total amount at the time of the settlement herein referred to, March 14, 1894, was $5,728.65. The respondent, Resser, claims that, on that date, a settlement was made between all of the parties relative to said judgment, which settlement he alleges included the claim of the appellant, Berryhill, who was present and took part in the settlement, and then claimed that he had authority to represent Davison in such transaction. Davison was a brother-in-law of Berryhill, and at one time they were partners in the law business. The terms of the settlement are set forth in the defendants' answer in this action, and that part thereof found by the trial court to be true is as follows:

"About the 14th day of March, 1894, a settlement was made between the plaintiff, this defendant, said Davison, and Carney; that at such settlement the plaintiff represented himself, and stated and represented that he had full authority to represent and bind said Davison; that it was then and there agreed by and between said plaintiff, acting for himself and for said Davison, and this defendant and said Carney, each acting for themselves, that said Carney should pay this defendant one thousand dollars ($1,000) in cash, and give his note to this defendant for five hundred ($500) dollars, due in one year, with interest at seven per cent., in full for this defendant's interest in said judgment, and that said Carney agreed to pay the plaintiff one hundred ($100) dollars in cash within sixty days from the day of settlement, and to deed to the plaintiff and said Davison the south one-half of section thirteen (13), township one hundred and forty-seven (147), range fifty-five (55), in Steele county, state of North Dakota, in full satisfaction of said Davison's interest in said judgment, and the plaintiff's claim, if any, against this defendant for the services mentioned in the complaint; that, relying on said settlement and on the statements of plaintiff that he had authority to represent said Davison, this defendant accepted the one thousand ($1,000) dollars in cash and the five hundred ($500) dollar note from Carney, in full settlement of his interest in said judgment."

At the time of this settlement, Resser executed a satisfaction of his half interest in the judgment, amounting to the sum of $2,864.32, the satisfaction being drawn and prepared by Berryhill, who also, as notary public, took Resser's acknowledgment to the same, the settlements having been made in the city of St. Paul. Resser was a resident of Fargo, North Dakota, and, on his way home, he stopped at Brainerd, where he saw Carney, who complied with the terms of the settlement, by paying Resser $1,000, and giving him his note for

$500, which he subsequently paid. There being some defect in the satisfaction prepared by Berryhill, a new one was executed by Resser for his interest in the judgment. He left Brainerd on the night of March 15, 1894, and arrived at his home, in Fargo, the next morning. Subsequently he received a letter from Carney dated Brainerd, March 18, 1894, inclosing a telegram from Berryhill in the following words: "From St. Paul via Brd. To Engr. P. Carney: Dated 3—16—1894, at No. 6. Davison declines land for his payment. Lien claimed on judgment. Hold bargain with Resser. Charles J. Berryhill." Before the receipt of this telegram, Resser had fully complied with the terms of the settlement to which Berryhill was a party, had released his interest of $2,864.32 in the judgment against Carney for $1,500, which Carney had paid him, and in no respect was he guilty of deceit or trickery, but had actually and in evident good faith carried out the terms of a settlement fully assented to by Berryhill himself.

Whether this settlement contained all the essential requisites of novation, so that the indebtedness from Davison and Resser to Berryhill was substituted for an indebtedness to him from Carney, we need not discuss or determine, because Berryhill having, by his agreement to the conditions of the settlement, induced or consented to Resser's releasing his interest in the judgment for about 60 per cent. of its face value, and Resser having fully performed all the conditions that he agreed to, and having thus been placed in a position whereby he could not regain his original standing and interest, the doctrine of estoppel applies, and Berryhill cannot, after such conduct, repudiate the terms of this settlement as against Resser, who had a right to rely upon the agreement. Resser had parted with a vested right in a large judgment, and had obtained a vested interest or right in $1,500, obtained from Carney upon the strength of that release. Good faith and equity require that Resser should be protected in the transaction.

Mr. Berryhill, who is a lawyer, wrote a letter of March 16, 1894, to Resser, in which he states: "Now, I shall have to see Carney again, and see what he has to say about it. As usual, the middleman gets it in the neck again, for, if you have settled with Carney, where am I to look for my fees in the case? You have your money. Carney has settled with you upon the basis of paying us $400 for my fees, and,

64 M.—31

if I get nothing, I have myself to blame." This seems to be corroboratory of the contention of the respondent, and of the finding of the court below. Mr. Berryhill seems to have performed faithful and valuable services for Davison and Resser, and ought to receive compensation therefor; but, by his agreement, he has deprived himself of the right of recovery against Resser, and, as he confesses in his letter, he is to blame for it.

Judgment affirmed.